# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| JOE PERRY GARRETT, | ) | |
| | ) | |
| v. | ) | Case No. CV412-237 |
| | ) | CR499-133 |
| UNITED STATES OF AMERICA | ) | |

## **REPORT AND RECOMMENDATION**

Joe Perry Garrett moves this Court for 28 U.S.C. § 2255 relief. CR499-133, doc. 771.[1] Following his October 26, 2000 conviction on drug-based offenses, this Court sentenced him to life, in part based on prior state court felony convictions. Doc. 600 at 3, *aff'd*, *United States v. Garrett*, 29 F. App'x 572 (11th Cir. 2001), *cert. denied*, 535 U.S. 979 (April 1, 2002). The one-year statute of limitations period set forth in 28 U.S.C. § 2255(f)(1) afforded him until April 1, 2003 to file a 28 U.S.C. § 2255 motion. Doc. 703 at 4. He filed a skeletal § 2255 motion on March 25, 2003, doc. 690, but did not submit a substantive version until May 5, 2003, doc. 703 at 4-6, so it was denied as untimely. Doc. 706.

---

[1] The Court is citing only to the criminal docket and using its docketing software's pagination; it may not always line up with each paper document's printed pagination.

On February 11, 2003, 316 days after his April 1, 2002 federal limitations trigger date, and 838 days after this Court entered its October 26, 2000 judgment against him (doc. 600), Garrett filed a *state* habeas corpus petition challenging his two underlying state convictions. Doc. 776 at 2-3 (dates set out by the government); doc. 777 at 2 (Garrett "adopts the procedural history set forth [by the government brief"). On June 30, 2008, he prevailed in getting those state convictions vacated. *Garrett v. State*, 284 Ga. 31, 33 (2008); doc. 771-5; doc. 776 at 2-3.

Pointing to those vacaturs, he sought 18 U.S.C. § 3582(c)(2) relief from this Court in August 2008. Doc. 739. The Court denied it because § 2255 was the proper remedy (hence, the Court will now refer to it as his "second § 2255 motion"), and it thus was successive.[2] Doc. 741.

---

[2] A "second" or "successive" § 2255 motion will not be considered until it gets past § 2255(h)'s gatekeeping provision, which provides:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
>
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

Consequently, the Court directed him to file a § 2255 application with the Eleventh Circuit. *Id.* at 2-3. He did, again relying upon the vacated convictions, doc. 771-4, but that court denied relief because Garrett failed to meet the statutory criteria for successive motions. *Id.* at 4.

On July 14, 2011, the Eleventh Circuit issued *Stewart v. United States*, 646 F.3d 856 (11th Cir. 2011), which implements *Johnson v. United States*, 544 U.S. 295 (2005). *Johnson* held that the state court vacatur of a predicate conviction is a new fact that triggers a fresh one-year statute of limitations under 28 U.S.C. § 2255(f)(4).[3] Thus, when a second motion to vacate is filed on the basis of information that did not exist at the time the first motion to vacate was filed and denied, the second motion is permitted -- provided the petitioner has acted with due diligence. *See Stewart*, 646 F.3d at 863–65. In effect, then, a numerical second § 2255 motion is now a "first" § 2255 motion, because only when the new fact (the vacatur) undergirding that second § 2255 motion finally

---

[3] 28 U.S.C. § 2255(f)(4) provides that the one-year limitation period for filing a § 2255 motion shall run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). A "state court vacatur of a predicate conviction is a new 'fact' that triggers a fresh one-year statute of limitations under § 2255(f)(4). . . ." *Stewart*, 646 F.3d at 858; *United States v. Hicks*, 2011 WL 7070532 at * 3 (N.D. Fla. Dec. 22, 2011).

appears is the motion ripe. Successiveness and time-bars are thus surmounted.[4]

On September 11, 2012 (425 days after *Stewart* issued), Garrett signed and mailed (thus, "filed")[5] the instant § 2255 motion, where he invokes *Stewart* to seek re-sentencing. Doc. 771 at 13, 14-17. His U.S. Sentencing Guidelines calculations show a substantial impact on his sentence absent the underlying prior convictions. Doc. 771-6 at 5, 6. The government does not quarrel with that. And, it "concedes that, pursuant to *Stewart*, Garrett's current § 2255 motion qualifies as a 'first' such motion and thus is not categorically barred by the gatekeeping

---

[4] *See also Darville v. United States*, 447 F. App'x 94, 95 (11th Cir. 2011) ("a § 2255 motion arising from the vacatur or expungement of state convictions will not be considered 'second or successive'"); *United States v. Bass*, 864 F.Supp.2d 353, 359-60 (E.D. Pa. 2012); *United States v. Pettiford*, 2013 WL 425128 at * 1 (D. Md. Jan. 30, 2013) ("Although more than one year has passed since Pettiford's conviction became final, his present petition is not time-barred because the vacatur of Pettiford's third conviction is a 'new fact' that triggers a new one-year limitations period"; "because the ground for Pettiford's new Section 2255 petition did not exist at the time that he filed his original petition, the new petition is not 'second or successive.'").

[5] Section 2255 motions are "considered filed at the moment the notice is delivered to prison authorities for forwarding to the courts." *Natson v. United States*, 2012 WL 3793000 at * 1 (11th Cir. Sep. 4, 2012).

provisions of § 2255(h)."[6] Doc. 776 at 5. Instead, it insists that Garrett's latest motion is untimely for two reasons:

> First, it was not filed within the one-year period following his notice of the vacatur of his state convictions, as is required even for "first" § 2255 motions by 28 U.S.C. § 2255(f)(4). Equitable tolling of that deadline, based on *Stewart*, is not appropriate. Second, Garrett failed to exercise due diligence in challenging his prior convictions following his federal sentencing.[7]

Doc. 776 at 5 (footnote added).

The Court has quoted the government's untimeliness argument verbatim because it contrasts with the position it took in *Jones*. There it argued a § 2255 motion's untimeliness "because [the movant] failed to file it within one year of either (1) the date [of the underlying conviction's vacatur]; *or* (2) the date the Eleventh Circuit issued its opinion in *Stewart v. United States*, 646 F.3d 856 (11th Cir. 2011)." *Jones*, 2013 WL 495654 at * 2 (emphasis added). Despite the fact that here Garrett took 425 days after *Stewart* to file the instant § 2255

---

[6] This is in direct contrast to the position it took in another, "*Stewart*-based" § 2255 case, *Jones v. United States*, 2013 WL 495654 at * 4 (S.D. Ga. Feb. 7, 2013) ("The government also asserts that Jones's motion is impermissibly second or successive and that claims like Jones's are not cognizable as a habeas claim.").

[7] Recall that Garrett sought vacatur in the state court on February 11, 2003, and that was only 316 days after his April 1, 2002 federal limitations trigger date for a standard, § 2255 filing. Nevertheless by that point 838 days had elapsed since this Court entered its October 26, 2000 judgment against him. As will be shown below, that 838-day factor applies in what is known as the "pre-vacatur" limitation period.

motion, the government has elected *not* to argue untimeliness based on that fact. Hence, it does raise here two of the arguments that it raised in *Jones*.

## I. GOVERNING STANDARDS

Section 2255 movants must promptly move for § 2255 relief in three time periods. First, in the "pre-vacatur" period, they must diligently move to vacate any prior state convictions used to enhance their federal sentence. Second, they must diligently seek § 2255 relief if those efforts are successful (post-vacatur period). And third, if they complied with those limits before *Stewart* issued, then they must move for such relief within one year of *Stewart's* July 14, 2011 issuance (i.e., file a *Stewart*-based motion by July 14, 2012). *Futch v. United States,* 2012 WL 4009710 at *1 n. 5 (S.D. Ga. Sep. 12, 2012); *Jones,* 2013 WL 495654 at * 4; *Green v. United States,* 2013 WL 485777 at * 2 (S.D. Ga. Jan. 7, 2013), *adopted,* 2013 WL 461021 (S.D. Ga. Feb. 6, 2013). Reasonable diligence is all that is required.[8] Laxity can be fatal.

---

[8] Movants must be diligent in discovering reasonably discoverable, clock-resetting facts and diligent in acting upon them. *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002), cited in *Reese v. United States*, 2012 WL 70680 at * 3 (S.D. Ga. Jan. 9, 2012). Reasonable, not maximum, diligence is required. *Aron*, 291 F.3d at 712.

*Bazemore v. United States*, CV411-259, doc. 17 at 5, 2012 WL 3552702 at * 2 (S.D. Ga. Aug. 15, 2012), *appeal dismissed*, doc. 34 (S.D. Ga. Feb. 15, 2013).[9]

Additional factors apply to the first time period (pre-vacatur) timeliness analysis. Again, the state court vacatur of a predicate conviction is a new "fact" that triggers a fresh one-year statute of limitations under § 2255(f)(4), so long as the movant exercised due diligence in seeking vacatur. *Johnson*, 544 U.S. at 302. But when is that due diligence requirement activated? The answer is the date on which the judgment in the federal case is enhanced by the prior convictions. *Id.*

---

And the inquiry must take into account the movant's confinement conditions -- the "reality of the prison system." *Id.* (quotes and cite omitted).

*Aron*, for that matter, addressed only whether a movant was diligent enough to meet § 2255's one-year limitation deadline. It thus was not an "equitable tolling" case, where the limitations deadline is missed but equitable considerations, which necessarily encompass a diligence determination, toll it. *See, e.g., Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir.1999) ("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."); *United States v. Myrthil*, 433 F. App'x 727, 729 (11th Cir. 2011).

[9] Compare the time limits in "vacatur" cases like this to non-vacatur, § 2254 and § 2255 cases like *Potter v. Taylor*, 2013 WL 126423 at * 1 (S.D. Ga. Jan. 2, 2013), where the 365-day limit is applied from the point of conviction, then to the point when direct and collateral appeals are litigated. *Id.* at * 1 ('petitioners like Potter must keep the ball rolling between rulings. Gaps anywhere along the way can be fatal. Potter dropped the ball for 426 days. Nor is there any suggestion that equitable tolling, otherwise "a rare and extraordinary remedy," *Doe v. United States*, 2012 WL 1138779 at * 1 (11th Cir. Apr. 6, 2012), should be applied.") (cites omitted).

at 309; *Green,* 2013 WL 485777 at * 2. Failure to show diligence in this pre-vacatur phase activates no new, one-year trigger. *Johnson,* 544 U.S. at 310; *Green,* 2013 WL 485777 at * 2 n. 1.

So unlike in other post-conviction time phases, *see supra* n. 9, there is no one-year limit under which the movant must act to seek vacatur. Rather, reasonable due diligence must be shown.[10] *See Johnson,* 544 U.S. at 310 ("from November 29, 2004, the date the District Court entered judgment in his federal case, Johnson was obliged to act diligently to obtain the state-court order vacating his predicate conviction. Had he done so, the 1–year limitation period would have run from the date he received notice of that vacatur."); *Raine v. United States,* 2012 WL 5869117 at * 1 n. 1 (S.D. Ala. Oct. 25, 2012); *Green,* 2013 WL 485777 at * 2. And if that "diligence requirement is not met, a new one-year limitation period is not triggered." *Green,* 2013 WL 485777 at * 2; *Rossetti v. United States,* 2012 WL 37177 at * 7 (D. Mass Jan. 9, 2012).

---

[10] Although "'due diligence' is an inexact measure of how much delay is too much," *Johnson,* 544 U.S. at 309, n. 7, "use of an imprecise standard is no justification for depriving [a rule's] language of any meaning." *Id.*; *see also Walker v. Martin,* 131 S.Ct. 1120, 1129 (2011).

## II. ANALYSIS

Because it is dispositive, the Court will address only the government's second untimeliness argument -- that Garrett failed to exercise due diligence in the pre-vacatur phase, when he took 838 days to challenge his prior convictions following his federal conviction.[11] Doc. 776 at 10-12. The Court agrees. As the procedural recapitulation above shows, Garrett generally kept the ball rolling in terms of his *federal* filings, but to invoke *Stewart* he also had roll the state proceedings ball *promptly* after his federal conviction. He did not. It is undisputed that this Court entered its judgment against Garrett on October 26, 2000, doc. 600, and he did not file his *state* habeas petitions until February 11, 2003, 838 days later.

Garrett says he exercised due diligence by hiring "vacatur counsel" within 8 months of his federal conviction, doc. 771 at 12; doc. 771-6 at 2-3; doc. 777 at 11-12, and that he intermittently asked counsel how that

---

[11] Its first argument -- that Garrett failed to file a § 2255 motion within the one-year period following his notice of the vacatur of his state convictions -- is somewhat problematic because arguably he did. Recall that this Court recharacterized his § 3582(c)(2) motion as a § 2255 motion but then -- erroneously, per *Stewart* -- denied it as successive. Had it addressed that motion the way *Stewart* directs, Garrett might well have reaped a different result. To that end, Garrett urges this Court to "relate back" under Fed. R. Civ. P. 15 his latest § 2255 motion, and the government opposes that as a *de facto* Fed. R. Civ. P. 60 motion. Hence, there are a host of sub-issues to resolve in reaching the government's first argument.

challenge was going, and even prepared his own petition when it looked like counsel slacked off. Doc. 771 at 12; doc. 771-6 ¶¶ 3-7. However, eight months is two-thirds of an entire limitations period, and Garrett concedes he could have filed a state habeas petition on his own. Nor does he supply any facts to show why, after he placed on notice that his lawyer was taking *months* to act, he did not act decisively (hire another lawyer, or litigate himself) and get his state habeas petition filed in a timely manner. Instead, he let a total of 838 days elapse before doing so. And it certainly did not serve Garrett's interest to take another 425 days after *Stewart* issued to file his latest § 2255 motion.[12]

Garrett therefore has failed to establish due diligence within the meaning of *Johnson* and § 2255(f).[13] By his own attestations it took him

---

[12] Again, the government is not arguing that the 425-day spread between *Stewart*'s issue date and Garrett's latest § 2255 filing should figure into any limitations calculation. Instead, it is focusing only on Garrett's pre-vacatur delay.

[13] *See Wright v. United States*, 301 F. App'x 871, 873-74 (11th Cir. 2008) (§ 2255 movant who had been sentenced as career offender after pleading guilty to charge of possession with intent to distribute cocaine base did not exercise due diligence by waiting over two years before moving state court to vacate his two prior state court convictions; although he began to pursue vacatur of his convictions less than one year following imposition of his federal sentence, and he hired attorney to assist him, *pro se* representation and procedural ignorance was not excuse for prolonged inattention); *Arroyo v. United States*, 359 F. App'x 118, 119 (11th Cir. 2009) (defendant did not act with due diligence to obtain vacatur of state court convictions used to enhance federal drug-based conviction, as required for reliance on one-year limitation period in post-conviction relief statute; he waited more than four years

10

at least 219 days (from the October 25, 2000 date of his conviction to "[o]n or about June 2001," doc. 776-6 at 2 ¶ 2, ¶ 3), to contact "vacatur counsel." And he knew that he needed to keep the ball rolling, even if his lawyer did not. *Id.* at 3 (Garrett concedes he realized this, and thus stepped in and got the ball rolling). Nor does he does dispute that it was his burden to nudge or fire his own lawyer and get his state petition diligently filed.

Yet, he failed. A delay of 838 days bespeaks no reasonable diligence. His laxity, for that matter, spilled over to the post-*Stewart* phase (he offers no satisfactory explanation for why it took him 425 days after *Stewart* issued to file his latest § 2255 motion), though the government does not, as it did in *Jones*, 2013 WL 495654 at * 4, exploit that fact. And neither attorney negligence nor a *pro se* litigant's

---

after federal conviction was final to file state post-conviction motion, he wrote only six letters over three years in attempt to gain records, and he did not begin to correspond with clerk's office seeking records until nine months after federal conviction; he also knew of immigration consequences of his pleas and convictions in state court when he consulted immigration attorney prior to federal conviction); *Rivers v. United States*, 416 F.3d 1319, 1322 (11th Cir. 2005) (finding lack of diligence where petitioner waited more than four years after his federal conviction to file his state habeas petition); *United States v. Griffin*, 134 F. App'x 277, 279 (11th Cir. 2005) (finding three-year delay between imposition of federal sentence and filing of state habeas motion "unreasonable" under *Johnson*); *United States v. Weems*, 2009 WL 1075645 at * 3 (N.D. Ga. Apr. 21, 2009) (unexplained, four-year gap between federal conviction and pursuit of vacatur showed insufficient *Johnson* diligence).

ignorance of the law can support due diligence or equitable tolling in these circumstances. *Maples v. Thomas*, 565 U.S. \_\_, 132 S.Ct. 912, 922-23 (2012); *Smith v. Comm'r, Ala. Dept. of Corr.*, 703 F.3d 1266, 1271-72 (11th Cir. 2012); *Everett v. Barrow*, 861 F. Supp. 2d 1373, 1376 n. 1 (S.D. Ga. 2012); *Futch*, 2012 WL 4009710 at * 1 (each movant must "keep the ball moving *at all times*.") (emphasis added); *Gonzalez v. United States*, 2012 WL 6045907 at * 5 (N.D. Ga. Dec. 5, 2012) ("General negligence allegations by a movant of an appellate attorney's failure to act according to a client's instructions, a lack of legal knowledge or education, a delay in receiving an order from a court, reliance upon the erroneous advice of fellow inmates regarding legal issues, or a movant's limited ability to speak English or communicate, by themselves, are not extraordinary circumstances or sufficient to excuse a lack of due diligence on the part of a movant in seeking § 2255 relief.").[14]

---

[14] As this Court noted in *Clarkson v. Williams*, 2011 WL 6328367 at * 3 (S.D. Ga. Nov. 14, 2011), there is a *bottom* line in this area and it is this: "Judicial systems are operated by human beings who err. Defendants know this. They thus must make a reasonable inquiry, even if told they may rest easy and do nothing, where a large amount of time marches by and nothing happens in their cases." *Id.* (applying *Webster v. Secr'y for Dep't of Corrs.*, 384 F. App'x 979, 983 (11th Cir. 2010)); *see also Doe v. United States*, 469 F. App'x 798, 800 (11th Cir. 2012) (denying equitable tolling to § 2255 movant who, *inter alia*, failed to "demonstrate how he exercised due diligence in pursuing his rights" after he learned that his lawyer failed to file a notice of appeal; hence, he did not satisfy his equitable tolling burden).

Garrett raises a second ground -- that he is entitled to relief under the Fair Sentencing Act of 2010 (FSA), Pub.L. No. 111–220 § 2(a), 124 Stat. 2372 (2010). Doc. 77 at 15. The FSA, however, does not apply to him because he was sentenced before its enactment. *Dorsey v. United States*, ___ U.S. ___, 132 S. Ct. 2321, 2331 (2012) (the FSA's more lenient mandatory-minimums apply to defendants sentenced after August 3, 2010); *United States v. Berry*, 701 F.3d 374, 377 (11th Cir. 2012); *United States v. Coe*, 2013 WL 440604 at * 2-3 (11th Cir. Feb. 6, 2013).

Finally, in his reply brief Garrett asks this Court to overlook his untimeliness because he is "actually innocent" of one of the now vacated convictions -- that of possessing cocaine with intent to distribute it. Doc. 777 at 14-15. This claim, which lacks any meaningful record support (supplying no record cites, Garrett basically recites facts from his personal memory), is frivolous. *See* 2012 WL 630052 at * 3 (S.D. Ga. Feb. 7, 2012) (denying similar claim for lack of an evidentiary showing).

## III. CONCLUSION

Garrett's § 2255 motion therefore must be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court

discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this 21st day of February, 2013.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

14